UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLORADO HOSPITAL ASSOCIATION, 7335 E. Orchard Road #100 Greenwood Village, CO 80111 | ) ) ) ) ) |
| GUNNISON VALLEY HOSPITAL 711 N. Taylor Street Gunnison, CO 81230 | ) ) ) ) ) |
| Plaintiffs, v. | ) ) ) ) |
| ERIC D. HARGAN, in his official capacity as Secretary, United States Dept. of Health and Human Services 200 Independence Avenue, SW Washington, DC 20201 | ) Civil Action No.: 17-2613 ) ) ) ) ) ) |
| SEEMA VERMA, in her official capacity as Acting Administrator, Centers for Medicare and Medicaid Services 200 Independence Avenue, SW Washington, DC 20201 | ) ) ) ) ) ) ) |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES 7500 Security Boulevard Baltimore, MD 21244 | ) ) ) ) ) ) |
| Defendants. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs, Colorado Hospital Association ("CHA") and Gunnison Valley

Hospital ("GVH") (collectively "Plaintiffs"), hereby seek declaratory and injunctive

relief against the Defendants, Eric  D. Hargan, Seema Verma, and the Centers for

Medicare and Medicaid Services ("CMS"), and for their causes of action state:

### Introduction

1.      GVH and CHA member hospitals treat patients who are eligible to receive

benefits from the Medicaid program, the medical assistance program established under

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the "Medicaid Act").

Congress established the Disproportionate Share Hospital ("DSH") program under the

Medicaid Act to help relieve the financial burden on certain hospitals that treat a

disproportionate share of Medicaid and uninsured patients.  42 U.S.C. § 1396r-4.  GVH

and CHA member hospitals qualify to receive payments under the DSH program.

2.      The DSH program helps reimburse DSH hospitals for the treatment they

provide to Medicaid and uninsured patients through payment adjustments.  42 U.S.C. §

1396r-4(g)(1)(A). These payment adjustments may not exceed:  (1) the costs of services

to individuals eligible for Medicaid, net of payments under the Medicaid Act

(hereinafter the "Medicaid Shortfall"); plus (2) the costs of services to individuals who

have no health insurance or other third-party coverage, net of payments by those

uninsured patients.  *Id.*  The product of this statutory equation is known as the DSH

hospital specific payment limit.  Only the first part of this statutory equation—the

calculation of the Medicaid Shortfall—is at issue in this case.  The Plaintiffs assert that

the Secretary's calculation of the Medicaid Shortfall directly conflicts with the Medicaid

Act and that the Secretary's recently promulgated regulation is invalid and, in any

event, cannot be applied retroactively to periods prior to the promulgation of that regulation.

### Jurisdiction and Venue

3.      The Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. § 706, as this action presents a case in controversy under the Medicaid Act, the APA, and the Declaratory Judgment Act.

4.      Venue lies in this district under 28 U.S.C. § 1391 and the Defendants reside in the District of Columbia and a substantial part of the events giving rise to these claims occurred in the District of Columbia.

### Parties

5.      The Plaintiff, Colorado Hospital Association ("CHA"), is a non-profit corporation with its principle place of business located at 7335 E. Orchard Road, Greenwood Village, Colorado.  The CHA represents over 100 hospitals and health systems throughout Colorado and serves as a trusted credible resource on health issues including, among other topics, legislative policy, advocacy and financial policy including payor functions, government reimbursement and advocacy on behalf of its members to ensure financial stability of hospitals in the interest of service to their communities.  Many of the hospital members of CHA qualify as DSH hospitals under the Colorado State Medicaid Plan.  The Defendants' illegal actions, requiring the miscalculation of the hospital-specific DSH payment limit for the CHA DSH qualified

members, will deprive those DSH qualified members of statutorily-authorized DSH payments totaling millions of dollars this year and each year thereafter.

6.      The Plaintiff, Gunnison Valley Hospital ("GVH"), is a Colorado not-for-profit hospital with its principle place of business located at 711 North Taylor Street, Gunnison, Colorado. GVH is a 24 bed Critical Access Hospital that at all times relevant to this case has been qualified under the Colorado State Medicaid Plan to receive Medicaid DSH funding. Defendants' illegal actions, requiring the miscalculation of GVH's hospital-specific DSH payment limit deprives GVH of statutorily-authorized DSH payments this year and each year after.

7.      Defendant, Eric D. Hargan is the Acting United States Secretary of Health & Human Services ("Secretary" or "HHS").  Acting Secretary Hargan, by and through his designees at CMS, undertook the illegal and unauthorized actions challenged in this case.  Acting Secretary Hargan is sued solely in his official capacity.

8.      Defendant, Seema Verma is the Administrator of CMS.  CMS is the agency that administers the Medicaid Program and the DSH Program.  Ms. Verma is sued solely in her official capacity.

9.      Defendant, CMS is the federal agency to which the Defendant Secretary has delegated the authority pursuant to the Social Security Act, 42 U.S.C. §§ 1396a(13)(A)(iv), 1396r4(a)(1)(B), to administer the Medicaid and DSH Programs.

## Federal Statutory and Regulatory Framework

10.     "Medicaid is a cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204, 1208 (2012). The program is funded jointly through federal and state funds.

*11.*     States are not obligated to participate in Medicaid, but must comply with several federally-imposed requirements if they decide to do so.

12.     One of these requirements is that states "take into account (in a manner consistent with section 1396r–4 of this title) the situation of hospitals which serve a disproportionate number of low-income patients with special needs" when setting hospital reimbursement rates. 42 U.S.C. § 1396a(a)(13)(A)(iv).

13.     This statute created "payment adjustment[s]" to hospital rates for qualifying hospitals. 42 U.S.C. § 1396r-4(c). These payment adjustments are available to hospitals that treat a disproportionate share of Medicaid patients. 42 U.S.C. § 1396r-4(b).

14.     Under the Medicaid Act, a DSH payment may not exceed:

[T]he costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A). This payment cap is known as the hospital-specific DSH payment limit.

15.     42 U.S.C. § 1396r-4(g)(1)(A) does not reference private insurance payments or Medicare payments.

16.    To ensure that the hospital-specific DSH payment limit has been

calculated correctly for each hospital, each state must provide an annual report and

audit of its DSH program to CMS. 42 U.S.C. § 1396r-4(j). This annual report must

include:

A.    An identification of each disproportionate share hospital that received
a payment adjustment under this section for the preceding fiscal year
and the amount of the payment adjustment made to such hospital for
the preceding fiscal year.

B.    Such other information as the Secretary determines necessary to
ensure the appropriateness of the payment adjustments made under
this section for the preceding fiscal year.

*Id.*

17.    The Secretary has promulgated regulations interpreting this reporting

requirement. 42 C.F.R. § 447.299.

18.    Those regulations require state annual reports to "present a complete,

accurate, and full disclosure of all of their DSH programs and expenditures." 42 C.F.R. §

447.299(a).

19.    They further require states to submit information "for each DSH hospital

to which the State made a DSH payment." 42 C.F.R. § 447.299(c).

20.    One piece of information each DSH hospital must submit for inclusion in

the state annual report is its "total annual uncompensated care costs." The regulatory

formula to determine such costs is as follows:

The total annual uncompensated care cost equals the total cost of care for
furnishing inpatient hospital and outpatient hospital services to Medicaid
eligible individuals and to individuals with no source of third party
coverage for the hospital services they receive less the sum of regular

Medicaid [fee-for-service] rate payments, Medicaid managed care organization payments, supplemental/enhanced Medicaid payments, uninsured revenues, and Section 1011 payments for inpatient and outpatient hospital services.

42 C.F.R. § 447.299(c)(16). A hospital's "total annual uncompensated costs" is the same as a hospital's "hospital-specific DSH payment limit."

21.     42 C.F.R. § 447.299 defines each type of cost and payment referenced in 42 C.F.R. § 447.299(c)(16). *See* 42 C.F.R. §§ 447.299(c)(6)-(15).

22.     42 C.F.R. § 447.299(c)(16) does not reference private insurance payments or Medicare payments.

23.     To verify the accuracy of these state annual reports, states must employ an independent auditor to audit the state's compliance with the federal DSH program. 42 U.S.C. § 1396r-4(j).

24.     These independent audits must verify, *inter alia*, that DSH payments made to each hospital comply with the applicable hospital-specific DSH payment limit. 42 U.S.C. § 1396r-4(j)(2).

25.     Any overpayments that the audit reveals must be recouped by the state within one year of their discovery or the federal government may reduce the state's future contribution. *Texas Children's Hosp. v. Burwell*, 76 F.Supp.3d 224, 230 (D.D.C. 2014) (citing 42 U.S.C. § 1396b(d)(2)(C), (D)).

26.     Without notice-and-comment rulemaking under the Administrative Procedures Act ("APA"), CMS instituted and began enforcing a "policy clarification" to the regulations contained in 42 C.F.R. § 447.299.  This "policy clarification" first

appeared in early 2010 in a document posted on Defendant CMS's website[1] responding to frequently asked questions ("FAQ") called, "Additional Information on the DSH Reporting and Audit Requirements." The "policy" was set forth in responses to questions numbered 33 and 34.

27.   Question Number 33, and CMS's response thereto, states:

**33.  Would days, costs, and revenues associated with patients that have both Medicaid and private insurance coverage (such as Blue Cross) also be included in the calculation of . . . the DSH limit in the same way States include days, costs and revenues associated with individuals dually eligible for Medicaid and Medicare?**

Days, cost[s], and revenues associated with patients that are dually eligible for Medicaid and private insurance should be included in the calculation of the Medicaid utilization rate (MIUR) for the purposes of determining a hospital eligible to receive DSH payments. Section 1923(g)(1) does not contain an exclusion for individuals eligible for Medicaid and also enrolled in private health insurance. Therefore, days, costs, and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the calculation of the hospital-specific DSH limit.

*Texas Children's Hosp.*, 76 F.Supp.3d at 231.

28.   Question Number 34, and CMS's response thereto, states:

**34. The regulation states that costs for dual eligibles should be included in uncompensated care costs. Could you please explain further? Under what circumstances should we include Medicare payments?**

Section 1923(g) of the Act defines hospital-specific limits on FFP for Medicaid DSH payments. Under the hospital-specific limits, a hospital's DSH payment must not exceed the costs incurred by that hospital in furnishing services during the year to Medicaid and uninsured patients less payments received for those patients. There is no exclusion in section 1923(g)(1) for costs for, and payment made, on behalf of individuals

---

[1] Originally at http://www.medicaid.gov/medicaid-chip-program-information/by-topics/financing-and-reimbursement/downloads/additionalinformationonthedshreporting.pdf

> dually eligible for Medicare and Medicaid. Hospitals that include dually-eligible days to determine DSH qualification must also include the costs attributable to dual eligibles when calculating the uncompensated costs of serving Medicaid eligible individuals. Hospitals must also take into account payment made on behalf of the individual, including all Medicare and Medicaid payments made on behalf of dual eligibles.  In calculating the Medicare payment for service, the hospital would have to include the Medicare DSH adjustment and any other Medicare payments (including, but not limited to Medicare IME and GME) with respect to that service. This would include payments for Medicare allowable bad debt attributable to dual eligible.

*New Hampshire Hospital Assoc. v. Burwell,* 2016 WL 1048023, at *3 (D.N.H. March 11, 2016).

29.     FAQ Nos. 33 & 34 indicated that DSH Hospitals must include in the calculation of their Medicaid Shortfall non-Medicaid payments such as private health insurance and Medicare payments, contrary to the plain language of 42 U.S.C. § 1396r-4(g)(1)(A), 42 C.F.R. § 447.299(c)(16).

30.     Because 42 U.S.C. § 1396r-4(g)(1)(A) and 42 C.F.R. § 447.299(c)(16) unambiguously require only Medicaid payments to be contained in the Medicaid Shortfall calculation, the policy clarifications set forth in FAQ Nos. 33 & 34 constitute substantive amendments to the statute and the regulations.  These substantive amendments were not authorized by Congress and were not promulgated using notice-and-comment rulemaking under the APA.

31.     The Colorado Department of Healthcare Policy & Financing ("HCPF"), the Colorado agency responsible for administering the Medicaid Program, indicated in mid-January, 2017, that FAQ Nos. 33 & 34 will require it to recover any overpayment identified through the DSH audit for fiscal year 2012-13.  If this recovery is permitted to

occur, it will adversely impact GVH and many CHA member hospitals and will require the hospitals to cut programs and services to their patient populations, including programs and services they provide to Medicaid patients.

32.     Application of the policies of FAQ Nos. 33 & 34 will also reduce by millions of dollars the amount of DSH funding GVH and CHA member hospitals are entitled to receive in future years.  This unanticipated loss of significant additional funding will compound the irreparable harm the hospitals, and their patient populations will face if FAQ Nos. 33 & 34 are permitted to stand.

### The Administrative Procedure Act

33.     The APA prescribes the procedures federal agencies are required to follow in promulgating rules.  A "rule" under the APA is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."  5 U.S.C. § 551(4).  "Rule making" is the "agency process for formulating, amending, or repealing a rule."  *Id.* § 551(5).

34.     Section 553 of the APA, governs the process of agency rulemaking. Section 553(b) provides that "[g]eneral notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof."  Section 553(c), in turn, provides that, if "notice [is] required by this section," the agency, after giving such notice, "shall give interested persons an opportunity to participate in the rulemaking through submission of written [comments]" and consider those comments before

adopting the rule.  These notice and comment procedures are required for substantive

agency actions that have the force and effect of law.

35.     Section 706(2) of the APA requires a reviewing court to "hold unlawful

and set aside" agency action that is "arbitrary, capricious, an abuse of discretion or

otherwise not in accordance with law [or] without observance of procedure required by

law."  5 U.S.C. § 706(2)(A), (D).

36.     In addition, 706(2) requires a reviewing court to set aside agency action

that is "contrary to constitutional right, power, privilege, or immunity" or that is "in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5

U.S.C. § 706(2)(B), (C).

### Texas Children's Hospital Litigation

37.     This Court has preliminarily enjoined the Defendants "from enforcing,

applying, or implementing FAQ No. 33." *Texas Children's Hosp.*, 76 F. Supp. 3d at 247.

In that case, this Court found that the plaintiffs had shown a likelihood of success on

the merits on their claim that the policy referenced in FAQ No. 33 (relating to private

health insurance payments) was "a substantive change to the formula for calculating a

hospital's DSH limit," that constituted final agency action requiring notice-and-

comment rulemaking under the APA. *Id.* at 241.

38.     Despite this unambiguous federal district court order, the Defendants

continue to apply the policy referenced in FAQ No. 33 relating to the inclusion of

private health insurance payments in the calculation of a DSH's Medicaid Shortfall.

Though the policy referenced in FAQ No. 34 relating to the inclusion of Medicare

payments in the calculation of a DSH's Medicaid Shortfall was not at issue in *Texas Children's Hospital*, that Medicare payment inclusion policy suffers from the same legal defects as the private health insurance payment policy addressed in the *Texas Children's Hospital* case.

39.     The Texas Children's Hospital case remains pending in this Court on cross-motions for summary judgment.

## Additional Medicaid DSH Litigation

40.     Since this Court's grant of the preliminary injunction in *Texas Children's Hospital*, other federal district courts have issued similar decisions on the issues in suit in the present case.

41.     On November 11, 2015, the New Hampshire Hospital Association together with three New Hampshire Hospitals brought suit against the Defendants in the United States District Court for the District of New Hampshire making the same claims as those presented in the *Texas Children's Hospital* case.  However, in addition to FAQ No. 33, the New Hampshire Hospital Association case also made a similar challenge to the Defendants' position relating to the inclusion of Medicare payments in the calculation of the hospital-specific DSH limit as expressed in FAQ No. 34.  *New Hampshire Hospital Assoc. v. Burwell,* 2016 WL 1048023 (D.N.H. March 11, 2016).

42.     Along with their Complaint, the New Hampshire Plaintiffs also filed a Motion for Preliminary Injunction referencing this Court's grant of summary judgment in the *Texas Children's Hospital* case.

43.    As did the Court in *Texas Children's Hospital*, the New Hampshire Court found that the Plaintiffs were likely to succeed on the merits of their claims regarding the Defendants' calculation of the Medicaid shortfall component of the hospital-specific DSH payment limit.  On March 11, 2016, the New Hampshire Court granted the Plaintiffs' Motion for Preliminary Injunction.

44.    The New Hampshire Plaintiffs subsequently filed a Motion for Summary Judgment on April 15, 2016, contending that the actions of the Defendants were invalid with respect to FAQ Nos. 33 & 34 since the policy of the FAQs were not properly promulgated through notice and comment rulemaking.  The New Hampshire Plaintiffs also contended that the actions of the Secretary were in violation of the New Hampshire State Medicaid Program.  The Defendants filed a Cross-Motion for Summary Judgment and upon the completion of briefing, the New Hampshire Court granted the Plaintiffs' Motion for Summary Judgment with regard to FAQ Nos. 33 & 34, but denied the Motion on the claims of violation of the State Medicaid Plan.

45.    In granting the Motion for Summary Judgment to the New Hampshire Plaintiffs, the Court ordered that the Defendants were "permanently enjoined from enforcing FAQ Nos. 33 & 34," and that the "Defendants shall follow the policies and procedures in effect before the Defendants issued FAQ Nos. 33 & 34, until and unless those policies and procedures are replaced by enforceable and properly promulgated regulation."

46.    In addition to *Texas Children's Hospital* and *New Hampshire Hospital Association*, two additional jurisdictions have addressed the issues presented in this case

and have issued preliminary injunctions prohibiting CMS from enforcing the policies

embodied in FAQ Nos. 33 & 34. *Children's Health Care v. Centers for Medicare & Medicaid*

*Servs*, No. 16-cv-4064, 2017 WL 3668758, at *1 (D.Minn. June 26, 2017); *Children's Hosp. of*

*King's Daughters, Inc. v. Price*, 258 F.Supp.3d 672 (E.D.Va. 2017).

### 2017 Final Rule

47.     On August 15, 2016, CMS published a "Proposed Rule" in the Federal

Register which purported to enforce by rule its position in current DSH litigation such

as *Texas Children's Hospital v. Burwell*, 76 F.3d 224 (D.D.C. 2014). *Medicaid Program;*

*Disproportionate Share Hospital Payments – Treatment of Third Party Payers in Calculating*

*Uncompensated Care Costs* 81 Fed. Reg. 53980-53985 (August 15, 2016).

48.     Thereafter, On April 3, 2017, the Defendants published a final rule

amending 42 C.F.R. § 447.299 to include within its text the policies referenced in FAQs

33 & 34. *Medicaid Program; Disproportionate Share Hospital Payments – Treatment of Third*

*Party Payers in Calculating Uncompensated Care Costs* 82 Fed. Reg. 16114-16122 (April 3,

2017).

49.     The Defendants summarize this rule as follows: "[T]his rule makes explicit

in the text of the regulation, an existing interpretation that uncompensated care costs

include only those costs for Medicaid eligible individuals that remain after accounting

for payments made to hospitals by or on behalf of Medicaid eligible individuals,

including Medicare and other third party payments that compensate hospitals for care

furnished to such individuals." *Id*. at 16114-15.

50.    The rule amends 42 C.F.R. § 447.299(c)(10) to read:

(10)    *Total Cost of Care for Medicaid IP/OP Services.* The total annual costs incurred by each hospital for furnishing inpatient and outpatient hospital services to Medicaid eligible individuals. The total annual costs are determined on a hospital-specific basis, not a service-specific basis. For purposes of this section, costs—

> (i) Are defined as costs net of third-party payments, including, but not limited to, payments by Medicare and private insurance.

> (ii) Must capture the total burden on the hospital treating Medicaid eligible patients prior to payment by Medicaid. Thus, costs must be determined in the aggregate and not by estimating the cost of individual patients. For example, if a hospital treats two Medicaid eligible patients at a cost of $2,000 and receives a $500 payment from a third party for each individual, the total cost to the hospital for purposes of this section is $1,000, regardless of whether the third party payment received for one patient exceeds the cost of providing the service to that individual.

*Medicaid Program; Disproportionate Share Hospital Payments – Treatment of Third Party Payers in Calculating Uncompensated Care Costs* 82 Fed. Reg. at 16122.

51.    The final rule took effect in on June 2, 2017 and purports to be a non-substantive clarification, and effectively adopts the Defendants' litigation position in *Texas Children's Hospital* and other similar cases that have been filed across the country.

52.    Further, the Defendants completely ignore federal court holdings that the policies contained in FAQs 33 & 34 are substantive changes rather than mere clarifications.

53.    In the final rule, the Defendants erroneously contend as follows:

C.    Effective Date

> Comment: Multiple commenters suggested that, if the proposed rule is finalized, CMS should only impose this policy prospectively

and should provide an adequate transition period to allow states to change their payment methodologies.

Response: **This rule is providing clarification to existing policy, therefore there is no issue of retroactivity, nor a need for a transition period.** Under the 2008 regulation, states were provided a 5-year transition period, from 2005 through 2010. Given previous rulemaking and implementing guidance, we do not believe it is necessary to afford an additional transition period.

*Medicaid Program; Disproportionate Share Hospital Payments – Treatment of Third Party Payers in Calculating Uncompensated Care Costs* 82 Fed. Reg. at 16118 (*emphasis added*).

54.     The courts have analyzed and have clearly rejected the Defendants' contention that the policies contained in FAQs 33 & 34 were clarifications.

55.     CMS's official position on recoupment of DSH "overpayments" identified by the mandated state audits, as set forth in regulations, and as directed at the GVH and CHA member hospitals is that DSH recipient hospitals must experience the negative financial impact of the inclusion in the calculation of their Medicaid shortfall non-Medicaid payments they receive such as private health insurance payments and Medicare payments. This inclusion not only reduces the amount of DSH funds the Plaintiff Hospitals are entitled to retain, but also is contrary to the plain language of 42 U.S.C. §1396r-4(g)(1)(A).

56.     The text of the final rule and the related CMS comments demonstrates that CMS does not have current statutory or regulatory authority to carry out its program of recouping DSH payments from hospitals on the basis set forth therein.

57.     CMS's final rule, is in excess of CMS's statutory authority. It violates and exceeds the powers granted to CMS by Congress in 42 U.S.C. § 1396r-4(g)(1)(A), which

expressly sets forth the "payments" which form the basis for calculating the Medicaid shortfall.

58.     42 U.S.C. § 1396r-4(g)(1)(A) specifies that a DSH hospital's specific DSH limit must be calculated as follows: the hospital-specific DSH limit is equal to (1) the costs incurred providing hospital services to persons who are eligible for medical assistance under the state plan net of payments received under the Medicaid Act, except for DSH payments plus (2) the costs incurred providing services to individuals who have no health insurance or other third-party coverage, net of payments made by or on behalf of those uninsured patients, except for payments made by a state or local governmental entity.

59.     The CMS rule impermissibly seeks to add new terms to a statute enacted by Congress without those terms: 42 U.S.C. § 1396r-4(g)(1)(A). The final rule seeks to add private health insurance and Medicare payments to the Congressionally-specified list of payments which can be deducted from the costs incurred in serving Medicaid-eligible and uninsured patients in determining a disproportionate share hospital's own DSH limit. This change increases the amounts that CMS demands to be recouped the Plaintiff Hospitals.

60.     CMS does not have the Constitutional authority or power to rewrite or alter a statute enacted by Congress.

61.     Moreover, CMS is seeking to impose a new rule retroactively to periods prior to its promulgation.

62.     CMS does not have the power under the APA to promulgate the new rule as a retroactive rule or a rule with retroactive application. *Northeast Hosp. Corp. v. Sebelus*, 657 F.3d 1 (D.C. Cir 2011).

## COUNT I

## Violation of 5 U.S.C. § 706(2)(C)

63.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 61.

64.     The Medicaid Act unambiguously sets forth the calculation to be used in determining the Medicaid Shortfall component of the hospital-specific DSH payment limit. 42 U.S.C. § 1396r-4(g)(1)(A).

65.     The Medicaid Act expressly provides that only "payments under this subchapter" are to be subtracted from the total costs of furnishing hospital services to individuals who are eligible for medical assistance under the State Plan. *Id.* "[T]his subchapter" refers to the Medicaid Act. *See id.*

66.     The policies referenced in FAQ Nos. 33 & 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific DSH payment limit are contrary to the plain language of 42 U.S.C. § 1396r-4(g)(1)(A), which makes no mention of including private health insurance or Medicare payments in that calculation.

67.     Section 706(2)(C) of the APA requires a reviewing court to "hold unlawful and set aside" agency action "in excess of statutory jurisdiction, authority, . . . or short of statutory right." 5 U.S.C. § 706(2)(C).

68.     In promulgating and enforcing the policies referenced in FAQ Nos. 33 &
34, the defendants acted in excess of their statutory jurisdiction, their statutory
authority, and short of statutory right under the Medicaid Act.

69.     The policies referenced in FAQ Nos. 33 & 34 are therefore unlawful and
should be set aside under 5 U.S.C. § 706(2)(C).

## COUNT II

### Violation of 5 U.S.C. § 706(2)(A), (D)

70.     Plaintiffs reallege and incorporate by reference the allegations contained
in Paragraphs 1 through 61.

71.     After notice-and-comment rulemaking, Defendant CMS duly adopted
regulations implementing the DSH program audit and reporting provisions of the
Medicaid Act. 42 U.S.C. § 1396r-4; 42 C.F.R. Parts 447 and 455. The regulations are
unambiguous. They expressly provide the methodology for calculating the Medicaid
Shortfall component of a DSH's hospital-specific DSH payment limit as follows: "the
total cost of care for furnishing inpatient hospital and outpatient hospital services to
Medicaid eligible individuals . . . less the sum of regular Medicaid FFS rate payments,
Medicaid managed care organization payments, supplemental/enhanced Medicaid
payments, ... ." 42 C.F.R. § 447.299(c)(16).

72.     Despite the existence of these unambiguous regulations, Defendant CMS,
without notice or opportunity for comment, issued the policies referenced in FAQ Nos.
33 & 34, which require the inclusion of private health insurance and Medicare payments

in the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit.

73.    The policies referenced in FAQ Nos. 33 & 34 amend the unambiguous substantive language of 42 C.F.R. § 447.299(c)(16) by adding private health insurance payments and Medicare payments to the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit.

74.    The policies referenced in FAQ Nos. 33 & 34 constitute "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

75.    Defendants are enforcing the policies referenced in FAQ Nos. 33 & 34 by, among other things, requiring independent auditors to follow them in auditing states' compliance with the DSH program and requiring states other than Washington and Texas to recoup any overpayments those policies create.

76.    Section 706(2)(A) of the APA proscribes agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Section 706(2)(D) of the APA proscribes agency action that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

77.    The policies referenced in FAQ Nos. 33 & 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit has the force and effect of law. As such, they are legislative rules that substantively amend the existing federal regulations without following the APA's notice-and-comment procedures.  *See* 5 U.S.C. §§ 553(b)-(d).

78.     Thus, the policies referenced in FAQ Nos. 33 & 34 are arbitrary, capricious, an abuse of discretion, not in accordance with law, and constitute agency action taken without observance of procedure required by law. They should therefore be vacated pursuant to 5 U.S.C. § 706(2)(A), (D).

## COUNT III

## Violation of 5 U.S.C. § 706(2)(B), (C)

79.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 61.

80.     Through the 2017 final rule, CMS seeks to add new terms to 42 U.S.C. § 1396r-4(g)(1)(A), a statute duly enacted by Congress that did not include those terms. The final rule seeks to add private health insurance and Medicare payments to the congressionally-specified list of payments which can be deducted from the cost incurred in serving Medicaid eligible and uninsured patients in determining a hospital's specific DSH payment limit.

81.     CMS does not have the constitutional authority or power to rewrite or alter a statute enacted by Congress.

82.     CMS does not have statutory authority or right under the Administrative Procedures Act to promulgate rules not authorized by Congress.

83.     Under the APA, CMS does not have the power to promulgate the 2017 final rule as a retroactive rule or a rule with retroactive application.

84.     The Medicaid Act unambiguously sets forth the calculation to be used in determining the Medicaid shortfall component of the hospital-specific DSH payment

limit.  The Act expressly provides that only "payments under this subchapter" are to be

subtracted from the total cost of furnishing hospital services to individuals who are

eligible for medical assistance under the state plan.  42 U.S.C. § 1396r-4(g)(1)(A).

85.    The 2017 final rule is invalid and in any event, cannot be applied

retroactively to periods prior to its promulgation.

## Prayer for Relief

WHEREFORE, Plaintiffs, Colorado Hospital Association and Gunnison Valley

Hospital respectfully request this Court enter judgment in their favor, and

A.    Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 & 34, are in excess of the Defendants' statutory jurisdiction or authority, or are short of Defendants' statutory authorization, and therefore violate the APA;

B.    Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 & 34, are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and therefore violate the APA;

C.    Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 & 34, have been imposed as a rule without observance of procedure required by law and therefore violate the APA;

D.    Preliminarily enjoin the Defendants from requiring that private health insurance and Medicare payments be deducted from costs in the Medicaid Shortfall component of a DSH's uncompensated care calculation (or requiring states to do so);

E.    Vacate any and all HHS or CMS policies requiring inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of

a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 & 34;

F.      Permanently enjoin the Defendants from enforcing, applying, or implementing any and all policies requiring the deduction of private health insurance and Medicare payments from costs in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including the policies referenced in FAQ Nos. 33 & 34 (or requiring states to enforce, apply or implement such policies);

G.      Pursuant to 28 U.S.C. §§ 2201 and 2202, declare unlawful and restrain Defendants from enforcing the 2017 final rule published by CMS at 82 Fed. Reg. 16114-16122, or alternately restrain Defendants from applying the final rule retroactively to periods prior to its promulgation;

H.      Award Plaintiffs their reasonable attorney's fees and costs pursuant to 28 U.S.C. 2412(d)(1)(A); and

I.      Grant such further relief as the Court deems just and necessary.


                              Respectfully submitted,

                              HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

                              /s/ N. Kent Smith
                              N. Kent Smith, Attorney No. 177749
                              Andrew B. Howk, Attorney No. IN0005
                              500 N. Meridian Street, Suite 400
                              Indianapolis, IN  46204-1293
                              (317) 633-4884
                              *Attorneys for Plaintiffs*